UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                        Case No. 12-CR-141

JESSE LOCKE,

    Defendant.

---

ORDER ADOPTING RECOMMENDATION (DOC. 98) AND DENYING MOTION TO SUPPRESS (DOC. 75)

Iowa State Trooper Aaron Taylor pulled Jesse Locke over on Interstate-80. Trooper Taylor asked for consent to search the car, and Locke agreed. Trooper Taylor and assisting officers found currency in a false compartment in the dashboard; there is no dispute that the officers used tools to remove the panel. Locke moves to suppress the currency and a statement he made afterward. He contends that Trooper Taylor did not have probable cause to pull him over, that using tools went beyond the scope of consent given to search, and that during the search he revoked his consent. Magistrate Judge William E. Callahan recommended denial of the motion and Locke has objected to the recommendation.

Although a magistrate judge has authority to decide many motions, as to a motion to suppress evidence the magistrate judge may only propose findings and make recommendations; the ultimate decision is for the district judge. 28 U.S.C. § 636(b)(1)(A), (B); Fed. R. Crim. P. 59(b)(1). The district court judge must review de novo the recommendations of the magistrate judge to which a party timely objects. 28 U.S.C.

§ 636(b)(1)(C); Fed. R. Crim. P. 59(b)(2), (3). Because Locke has objected, the court has reviewed the recommendation de novo.

First, Locke contends that the magistrate judge should have held an evidentiary hearing on his suppression motion and asks that this court conduct one. But previously, Locke agreed that an evidentiary hearing was not necessary as long as the court considered the traffic stop video. Notably, in a letter filed August 28, 2012, defense counsel wrote that as to the search "there are no issues of historical fact. The entire incident is depicted on the video." (Doc. 84 at 2.) However, he contended that there were issues of "constitutional fact," e.g., whether Locke's statements on the video amounted to a revocation of consent. Counsel concludes the letter by suggesting that the court "review the video and, based upon that evidence, make a determination of constitutional fact as to the issues raised in Locke's motion." (*Id.* at 3.) Thereafter, in a letter filed September 9, 2012, defense counsel confirmed that he desired no hearing:

> This is to follow up on Ms. Domaszek's letter to the court regarding the motion hearing. It is true that we conferred, and we agreed to proceed by affidavit. However, the government's letter neglects to state that the court will be provided with a DVD of the stop, and that the parties agree that the court will review this video recording as evidence of what occurred that day. The motion will be decided upon those facts.
> With that understanding, I do not believe that a hearing is necessary. I will take the liberty of informing Mr. Locke that he does not need to appear.

(Doc. 91.)

Now, defense counsel submits that a hearing is required because of a dispute as to whether Locke was speeding—Locke says he was going sixty-eight miles per hour (not seventy-two as purported by the officer) and he questions whether the radar detector was accurate. However, Locke does not dispute that the state trooper saw a reading of

seventy-two miles per hour on the radar detector or that the speed limit on the road was seventy. Trooper Taylor swears that he saw that reading and, importantly, a photograph (attached to his affidavit) was taken of the reading at the time it was recorded. (Doc. 90, ¶ 6 & attach. A.) Further, Trooper Taylor avers that he had received training on using the device, had used the radar device hundreds of times, and had received refresher courses. Further, he swears that the radar device was checked for accuracy at the beginning and end of every shift, was certified and calibrated once per year, and was working properly on the day Locke was pulled over. (Doc. 90, ¶¶ 2-4.) Interestingly, Locke suggests no evidence to the contrary that would be brought out in a hearing.

As indicated by the magistrate judge, whether Locke's speed was actually sixty-eight or seventy-two or somewhere between is not material for present purposes. Probable cause for a search exists when the facts and circumstances known to the officer allow a reasonable belief that evidence of criminal activity exists in the place to be searched. *United States v. Hicks*, 650 F.3d 1058, 1065 (7th Cir. 2011). Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id.* (internal quotation marks omitted). Trooper Taylor's radar detector reading of seventy-two provided probable cause for pulling the car over. Even if in actuality the calibration was off two miles per hour or more, evidence regarding the exactitude of the calibration would not make a difference regarding probable cause for stopping Locke while driving on Interstate 80. The radar detector had been certified regularly each year, checked that day before use in Locke's case, and was working properly. The reading of seventy-two supplies, at least, a probability or substantial chance that Locke was speeding. Thus, this court finds that no evidentiary hearing had to be conducted by the magistrate

3

judge or is presently necessary. The video evidence, photograph of the radar device, and Trooper Taylor's affidavit show the necessary facts; whether Locke was actually speeding is not material to the issue of probable cause for the vehicle stop in light of the radar detector reading.

Next, Locke challenges the scope of the vehicle search. He contends that he did not give consent for the officers to remove parts of the car to search. Whether a search remains within the scope of consent is determined by looking at the totality of the circumstances. *United States v. Saucedo*, 688 F.3d 863, 865 (7th Cir. 2012). "The scope of a search is generally defined by its expressed object." *Id.* (internal quotation marks omitted). When someone consents to a general search, officers may search any place in that area where the items could be concealed, including containers that might contain those objects. *Id.* at 865-66. If the person is informed that an officer is looking for particular things and in response gives consent without explicit limitations, "the consent permits law enforcement to search inside compartments and containers within the car, so long as the compartment or container can be opened without causing damage." *Id.* at 866 (internal quotation marks omitted). Such compartments include hidden compartments that require tools such as flashlights and screwdrivers to open, so long as the officers do not cause damage or dismantle functional parts of the car such as doors. *Id.* at 866-67.

*Saucedo* is on point in Locke's case, as the Seventh Circuit found permissible an officer's use of a screwdriver to access a hidden compartment behind a television in a tractor-trailer. Similar to the facts in *Saucedo*, those in this case show that use of tools to access the hidden panel in the dashboard was objectively reasonable in light of the consent given. Immediately before asking Locke if he consented to a search of the car,

Trooper Taylor asked Locke whether he had any weapons, drugs, alcohol, or large amounts of currency in the vehicle he was driving when stopped. A reasonable person would have understood that the consent to search covered places where any of those items could be located. Under *Saucedo*, that consent included compartments. Further, the written consent Locke signed covered "all contents of the car" without any exclusions as to areas of the car, containers, or places requiring use of tools. (*See* Doc. 82 Ex. 2.)

Next, Locke argues that he revoked consent before Trooper Taylor and the other officers found the currency. Locke points to an exchange at 1:13:20 (or around 9:37:10) on the video in which Locke tells one of the other officers and then Trooper Taylor that he would like to get back on the road. Trooper Taylor then says that Locke's story regarding the car and his trip does not make sense and "that's why we're doing what we're doing. Your story is all jacked up." Trooper Taylor then says that the officers are going to keep searching until they are satisfied. Locke argues that by his statements he revoked consent and that after Trooper Taylor's statements he relented but not freely and voluntarily. (*See* Doc. 84 at 2.)

After viewing the video the court agrees with the magistrate judge that consent was given freely and voluntarily and not revoked. Locke and Torres agreed to a search of the car and all contents of the car. At the video section referenced by Locke in his motion and extending for about four minutes thereafter, Locke did not object to further searching. Instead, he asked whether he could get back on the road, suggesting impatience rather than disagreement. Locke noted that officers were "tearing the truck up," but he did not say he wanted them to stop. Although Trooper Taylor stated a few times that the officers were going to keep searching until they were satisfied, he immediately followed those

statements with "unless you tell me otherwise" or "OK?" or "if you're alright with that." Locke did not respond with any direction that the officers stop. Instead, he said it was "OK" and he was "alright." A reasonable officer in Trooper Taylor's position would have understood Locke to be continuing his consent rather than revoking it. The video shows no coercion or pressure on Locke such that his will to object was overcome.

Finally, Locke's objection to the use of his statement made in the squad car following seizure of the currency is based on his belief that the statement was fruit of the poisonous tree. Because state troopers searched the vehicle Locke was driving legally and seized currency that was found legally, Locke's request that his statement be suppressed is rejected for lack of support.

For these reasons,

IT IS ORDERED that the magistrate judge's recommendation is adopted and Locke's motion to suppress is denied.

Dated at Milwaukee, Wisconsin, this 19th day of December, 2012.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
U. S. DISTRICT JUDGE